CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No.:  23-10063 (SHL)<br><br>Jointly Administered |
| Genesis Global Capital, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>Digital Currency Group, Inc.<br><br>                    Defendant. | Adv. Pro. No. 23-_____ (SHL) |

## COMPLAINT

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

Genesis Global Capital, LLC ("Plaintiff" or "GGC") hereby files this complaint (the "Complaint") against Digital Currency Group, Inc. ("DCG") for turnover of certain property of the GGC estate pursuant to 11 U.S.C. § 542(b).

In further support of this Complaint, GGC, by and through its undersigned counsel, respectfully states:

## NATURE OF THE ACTION

1.      GGC commenced this adversary proceeding pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure to recover undisputed amounts of money owed to GGC by DCG in connection with certain loans that matured on May 9, May 10, and May 11, 2023, respectively (as described in detail below herein, the "Loans" or the "DCG Loans").

2.      GGC asserts herein a request for turnover of the undisputed overdue and presently owing amounts under the Loans, including the principal amounts of the Loans, accrued interest on the Loans, and applicable Late Fees (as defined in the MLA and set forth herein), each as pursuant to the MLA (as defined below) governing the relationship between GGC as lender and DCG as borrower.

## THE PARTIES

3.      Plaintiff GGC is a limited liability company organized under the laws of Delaware that provides lending and borrowing services for digital assets and fiat currency.  GGC is 100% owned by Genesis Global Holdco, LLC ("Holdco"), which is 100% owned by DCG.

4.      Defendant DCG is a corporation organized under the laws of Delaware, with its principal place of business in Connecticut, that engages in venture capital investing in the digital currency market.  DCG is authorized to do business in the State of New York under Section 1304 of the Business Corporation Law.

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 7008 of the Bankruptcy Rules, Plaintiff consents to the entry of final orders or a final judgment by this Court in this adversary proceeding if it is later determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND[2]

### I.      The Master Loan Agreements and the Loans[3]

8.      On November 10, 2022, GGC and DCG entered into an Amended and Restated Master Loan Agreement (the "DCG MLA" or the "MLA," attached hereto as **Exhibit 1**).

9.      Pursuant to the DCG MLA, GGC provided the following loans to DCG:

---

[2]      Pursuant to mediation ordered by the Court and consistent with the Debtors' Notice of Mediation Termination dated August 28, 2023 (ECF No. 625), Plaintiff, Defendant, and other interested parties in these Chapter 11 Cases continue to discuss a potential settlement of various claims among the parties that, if consummated, would encompass Plaintiff's claims asserted herein.  In connection with those settlement discussions, the Plaintiff and Defendant are discussing the terms of a potential Partial Repayment Agreement that would require Defendant to make certain specified payments on account of amounts currently owed to Plaintiff in exchange for an agreement of Plaintiff to forbear from exercising certain enforcement rights with respect to such amounts, subject to specified terms and conditions.  If the parties reach agreement on the terms of a Partial Repayment Agreement, Plaintiff intends to forbear from its pursuit of this action subject to the terms of such agreement.

[3]      For the avoidance of doubt, by this pleading Plaintiff does not adopt any of the characterizations or descriptions contained herein or admit or waive any applicable defenses and otherwise specifically reserves all claims, causes of action, rights, remedies, powers, and defenses.

- **January 24 Loan**: a fixed-term loan to DCG dated January 24, 2022, for a principal amount of $100,000,000, and with an original maturity of July 24, 2022 (pursuant to the Loan Term Sheet attached hereto as **Exhibit 2**), with an extended maturity date of May 11, 2023 (pursuant to the Loan Term Sheet attached hereto as **Exhibit 3**);

- **February 23 Loan**: a fixed-term loan to DCG dated February 23, 2022, for a principal amount of $100,000,000, and with an original maturity of August 23, 2022 (pursuant to the Loan Term Sheet attached hereto as **Exhibit 4**), with an extended maturity date of May 11, 2023 (pursuant to the Loan Term Sheet attached hereto as **Exhibit 5**);

- **May 9 Loan**: a fixed-term loan to DCG dated May 9, 2022, for a principal amount of $200,000,000, and with a maturity of May 9, 2023 (pursuant to the Loan Term Sheet attached hereto as **Exhibit 6**); and

- **May 10 Loan**: a fixed-term loan to DCG dated May 10, 2022, for a principal amount of $100,000,000, and with a maturity of May 10, 2023 (pursuant to the Loan Term Sheet attached hereto as **Exhibit 7**).

10.     On May 9, 2023, the May 9 Loan matured; on May 10, 2023, the May 10 Loan matured; and on May 11, 2023, the January 24 Loan and the February 23 Loan matured (each such date, a "Maturity Date").  Pursuant to Section II(c)(i) of the MLA, the occurrence of each Maturity Date triggered an obligation by DCG to return the Loan Balance[4] to GGC, including the principal amounts outstanding under the DCG Loans.

11.     Accordingly, the principal amounts under the DCG Loans are matured and currently payable by DCG to GGC.

## II.     Communications Between the Parties Regarding the DCG Loans

12.     On May 9, 2023, DCG sent a request for wire instructions to GGC (the "May 9 DCG Request," attached hereto as **Exhibit 8**) for the repayment of the DCG Loans, in which DCG expressed the view that the May 9 DCG Request itself "triggers the automatic conversion

---

[4]     The MLA defines the Loan Balance as "the sum of all outstanding amounts of Loaned Assets, including New Tokens, Loan Fees, Late Fees, and any Earlier Termination Fee or New Token Fee for a particular Loan, as defined in Sections III and V."

4

of the Outstanding Loans to Open Loans (as defined in the DCG MLA), consistent with our prior course of dealing."[5]

13.     The May 9 DCG Request misinterprets the DCG MLA.  Section II(c)(i) of the DCG MLA provides that the DCG Loans will convert to Open Loans only if (i) DCG makes a timely request for wire instructions for repayment of the Loans and (ii) GGC fails to provide such wire instructions on the day prior to the applicable Maturity Date.

14.     **With respect to condition (i)**, the May 9 DCG Request for wire instructions for repayment of the Loans at 10:37 p.m. (ET) on May 9, 2023 does not constitute a "timely" request as contemplated in the MLA.  Because Section II(c)(i) of the DCG MLA contemplates that, following DCG's request for wire instructions, GGC shall provide the wire instructions no later than the day prior to the Maturity Date of a given Loan, the May 9 DCG Request cannot constitute timely notice with respect to the May 9 Loan or the May 10 Loan (given that it was sent on, not before, the Maturity Date for the May 9 Loan, and was sent approximately 90 minutes before midnight on the day prior to the Maturity Date for the May 10 Loan).

15.     Regardless of whether the May 9 DCG Request constituted a timely request for wire instructions as contemplated by the DCG MLA, **with respect to condition (ii)**, GGC did not fail to provide the requested wire instructions—it provided them promptly upon receiving the May 9 DCG Request (*see* **<u>Exhibit 9</u>** attached hereto).  Before midnight on May 9, 2023, on behalf of GGC, Arianna Pretto-Sakmann provided wire instructions in response to the May 9 DCG Request.  On May 10, 2023, Ms. Pretto-Sakmann followed up on the same email thread to ensure that delivery of her prior message had been successful, and Andrew Sullivan, also on

---

[5]     The MLA defines an Open Loan as "a Loan without a Maturity Date where Borrower has a Prepayment Option and Lender has a Call Option."

behalf of GGC, responded to the same thread with further information regarding the DCG Loans and wire instructions for repayment of the DCG Loans.

16.     Accordingly, the conditions articulated in Section II(c)(i) of the DCG MLA for the conversion of the DCG Loans to Open Loans have <u>not</u> been met, the DCG Loans matured as of May 9, May 10, and May 11, 2023, respectively, and the amounts owed thereunder to GGC remain overdue and outstanding as of the filing hereof.

17.     Furthermore, on May 12, 2023, GGC sent to DCG a letter, attached hereto as **Exhibit 10**, expressly reserving all rights under the MLA and relating to the Loans, such that GGC cannot be understood to have waived any of its rights under the MLA or relating to the DCG Loans.

### III.    Accrued Interest Incurred under the Loans

18.     Pursuant to Section III(a) of the MLA, each of the DCG Loans accrued interest— referred to as the "Loan Fee"—on the principal amount at an annual rate, calculated daily, as specified in the applicable term sheet.[6]

19.     The interest rate applicable to each of the DCG Loans was:

    a.     **January 24 Loan**: 12.00% annual (pursuant to the Loan Term Sheet attached hereto as Exhibit 3);

    b.     **February 23 Loan**: 10.00% annual (pursuant to the Loan Term Sheet attached hereto as Exhibit 5);

---

[6]     Section III(a) contains a scrivener's error insofar as it indicates that the "The Loan Fee will be calculated off all outstanding portions of the Loaned Digital Currencies." To avoid the need to resolve any potential dispute, Plaintiff is not presently seeking through this Complaint the turnover of or any judgment regarding the amounts represented by the Loan Fees under the MLA, on which all parties' rights and defenses are reserved.

    c.   **May 9 Loan**: 10.66% annual (pursuant to the term sheet attached hereto as Exhibit 6);

    d.   **May 10 Loan**: 10.66% annual (pursuant to the term sheet attached hereto as Exhibit 7).

20.    Pursuant to Section III(a) of the MLA, the Loan Fees are payable monthly by DCG in arrears.  Since the origination of the DCG Loans, DCG has paid the Loan Fees, calculated off the full principal amounts outstanding under the DCG Loans, to GGC in accordance with the terms of the MLA and respective term sheets.

21.    Pursuant to Section II(c)(i) of the MLA, the occurrence of each Maturity Date triggered an obligation by DCG to return the Loan Balance (as defined in the DCG MLA) to GGC.  The Loan Balance includes, in part, the Loan Fees outstanding under the DCG Loans.

22.    Accordingly, the Loan Fees became due on the Maturity Dates, and are currently payable by DCG to GGC.  The Loan Fees continue to accrue under the DCG MLA as of the date of this filing.

**IV.    Late Fees Incurred in Connection with Termination of the Loans**

23.    Pursuant to Section II(d)(i) of the DCG MLA, the occurrence of the Maturity Dates and DCG's failure to return the Loaned Assets (as defined in the MLA) outstanding under the Loans as of their Maturity Dates resulted in the termination of the DCG Loans.

24.    Pursuant to Section III(c) of the DCG MLA, DCG incurred "Late Fees" in connection with its failure to return the Loaned Assets and its failure to pay outstanding Loan Fees.  Late Fees are calculated as 10% (annualized, calculated daily) on all outstanding and overdue portions of such amounts.[7]

---

[7]    Like Section III(a), Section III(c) contains a scrivener's error insofar as it indicates that DCG shall incur the Late Fee "on all outstanding and overdue portions of the Loaned Digital Currencies and Loan Fees."  To avoid the

25.     Because the DCG Loans were not repaid on their respective Maturity Dates or converted to Open Loans, nor was the termination of any of the Loans suspended, the amounts due to GGC pursuant to the DCG MLA include applicable Late Fees.  On or about June 16, 2023, GGC sent DCG an invoice, attached hereto as **Exhibit 11**, for Late Fees due as of May 31, 2023, which amount remains outstanding as of the filing hereof.  On or about July 7, 2023, GGC sent DCG an invoice, attached hereto as **Exhibit 12**, for Late Fees due as of June 30, 2023, which amount remains outstanding as of the filing hereof.  On or about August 2, 2023, GGC sent DCG an invoice, attached hereto as **Exhibit 13**, for Late Fees due as of July 31, 2023, which amount remains outstanding as of the filing hereof.

26.     Accordingly, the Late Fees are matured and currently payable by DCG to GGC. The Late Fees continue to accrue under the DCG MLA as of the date of this filing.

## CLAIM FOR RELIEF

### COUNT ONE:  Turnover of Principal Amount
### (Turnover of Assets – 11 U.S.C. §§ 541, 542 and 550)

27.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 26 of this Complaint as though fully set forth herein.

28.     The MLA is a valid, enforceable, and legally binding contract between GGC and DCG.  The MLA and Loan Term Sheets are specific in their terms as to both the maturity date of the DCG Loans and the principal amounts owed to GGC thereunder.

---

need to resolve any potential dispute, Plaintiff is not presently seeking through this Complaint the turnover of or any judgment regarding the amounts represented by the Late Fee under the MLA, on which all parties' rights and defenses are reserved.

29.     The DCG Loans matured on May 9, May 10, and May 11, 2023, and were not repaid.

30.     DCG is wrongfully in possession of property of the GGC estate in the amount of $500,000,000, reflecting the full outstanding principal amount owed under the DCG Loans (the "Principal Amount"), which is matured and payable immediately.

31.     The Principal Amount is property that the Debtor could use under Section 363 of the Bankruptcy Code, and is of significant value to the GGC estate.

32.     Pursuant to Section 542 of the Bankruptcy Code, DCG should be directed to turn over the Principal Amount to the GGC estate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court award the following relief:

a) turnover to the GGC estate of the Principal Amount; and

b) such other and further relief as the Court deems just and equitable.

*[Remainder of page intentionally left blank.]*

Dated:    September 6, 2023
New York, New York

*/s/ Sean A. O'Neal*

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and Debtors-in-Possession*