CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas Kessler
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 23-10063 (SHL)<br><br>Jointly Administered |
| Genesis Global Capital, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Digital Currency Group, Inc.<br><br>Defendant. | Adv. Pro. No. 23- 01168 (SHL) |

**NOTICE OF TRANSFER OF PRA COLLATERAL**
**AND RECEIPT OF PAYMENTS FROM DIGITAL CURRENCY**
**GROUP, INC. AND DCG INTERNATIONAL INVESTMENTS, LTD.**
**<u>IN CONNECTION WITH OBLIGATIONS SUBJECT TO TURNOVER ACTIONS</u>**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, 38th Floor, New York, NY 10007.

**PLEASE TAKE NOTICE** that, on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC and its affiliates Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific Pte. Ltd., as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and the cases, the "Chapter 11 Cases"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on September 6, 2023, GGC initiated adversary proceedings by filing the *Complaint*, ECF No. 1, Adv. Pro. 23-01168 (SHL) (the "DCG Complaint") against Digital Currency Group, Inc. ("DCG") and the *Complaint*, ECF No. 1, Adv. Pro. 23-01169 (SHL) (the "DCGI Complaint," and together with the DCG Complaint, the "Complaints") against DCG International Investments Ltd. ("DCGI") seeking turnover of certain property pursuant to 11 U.S.C. § 542(b).

**PLEASE TAKE FURTHER NOTICE** that, on September 12, 2023, GGC filed the *Notice of Voluntary Stay of Prosecution of Complaints Against Digital Currency Group, Inc. and DCG International Investments Ltd.*, ECF No. 4, agreeing to a voluntary stay of prosecution of the Complaints, subject to the terms and conditions of the *Partial Repayment Agreement* dated as of September 12, 2023 between GGC, DCG and DCGI attached thereto as Exhibit A (as may be amended from time to time, the "Partial Repayment Agreement"),[2] without prejudice to its ability to continue to pursue the Complaints.

**PLEASE TAKE FURTHER NOTICE** that, on September 13, 2023, GGC received, pursuant to the terms of the Partial Repayment Agreement, the following payments or transfers from the applicable DCG Party: (i) a forbearance fee in the amount of $2,315,937.92, (ii) a payment of $58,500,000 on account of outstanding principal in respect of the DCG Loans, (iii) a transfer of 638.54616543 BTC on account of outstanding principal in respect of the June 22 Loan and (iv) a transfer of 70.43849944 BTC on account of Late Fees accrued under the June 22 Loan as of August 31, 2023.[3]

**PLEASE TAKE FURTHER NOTICE** that, on October 3, 2023, GGC received, prior to the applicable Payment Date under the Partial Repayment Agreement, the following payments or transfers from the applicable DCG Party: (i) two payments totaling $58,500,000 on account of outstanding principal in respect of the DCG Loans and (ii) a transfer of 599.91212208 BTC on account of outstanding principal in respect of the June 22 Loan.

**PLEASE TAKE FURTHER NOTICE** that, on October 20, 2023, GGC received, prior to the applicable Payment Date under the Partial Repayment Agreement, the following payments or transfers from the applicable DCG Party: (i) a payment in the amount of $58,000,000

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Partial Repayment Agreement.

[3] On September 13, 2021, GGC filed a *Notice of Receipt of Payment by Digital Currency Group, Inc. and DCG International Investments Ltd. in Connection with Obligations Subject to Turnover Actions*, ECF No. 5, that included a typographical error in clause (iii) stating that the amount of BTC received on such date was 639.54616543 BTC. As noted above, the correct amount that should have been referenced in clause (iii) was 638.54616543 BTC.

2

on account of outstanding principal in respect of the DCG Loans and (ii) a transfer of 574.22242453 BTC on account of outstanding principal in respect of the June 22 Loan.

**PLEASE TAKE FURTHER NOTICE** that, on November 28, 2023, GGC and the DCG Parties amended the Partial Repayment Agreement in the manner as set forth in Exhibit C to the *Debtors' Motion for Entry of (I) Consent Judgment Against the DCG Parties and (II) Order Authorizing, to the Extent Necessary, GGC to Take Actions in Furtherance of the Partial Repayment Agreement Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, or, in the Alternative, Bankruptcy Rule 9019(a)*, ECF No. 9 (the "PRA Motion").

**PLEASE TAKE FURTHER NOTICE** that, on November 28, 2023, in connection with the amendment of the Partial Repayment Agreement, GGC and the DCG Parties entered into (i) that certain Security Agreement dated as of November 28, 2023 between DCG, as pledgor, and GGC, as secured party (the "DCG Security Agreement"), attached hereto as Exhibit 1 and (ii) that certain Security Agreement dated November 28, 2023 between DCGI, as pledgor, and GGC, as secured party (the "DCGI Security Agreement" and together with the DCG Security Agreement, the "Security Agreements"), attached hereto as Exhibit 2.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to section 2(b) of the Security Agreements, (a) DCG granted to GGC a first priority continuing security interest in and lien on all of DCG's right, title and interest in and to (i) 37,917 shares of Grayscale Ethereum Trust and (ii) 1,548,717 shares of Grayscale Ethereum Classic Trust ((a)(i) and (a)(ii) together, the "DCG Collateral"); and (b) DCGI granted to GGC a first priority continuing security interest in and lien on all of DCGI's right, title and interest in and to (i) 4,830,343 shares of Grayscale Ethereum Trust and (ii) and 1,422,175 shares of Grayscale Ethereum Classic Trust ((b)(i) and (b)(ii) together, the "DCGI Collateral" and together with the DCG Collateral, the "PRA Collateral").

**PLEASE TAKE FURTHER NOTICE** that, on November 30, 2023, GGC received from the applicable DCG Party the Amendment Effectiveness Payment and CoinDesk Sale Payment, pursuant to sections 6(a)(i) and (iii) of the Partial Repayment Agreement, respectively, comprised of the following: (i) a payment of $77,000,000 on account of outstanding principal in respect of the DCG Loans and (ii) a transfer of 608.68621696 BTC on account of outstanding principal in respect of the DCGI Loans.

**PLEASE TAKE FURTHER NOTICE** that, on December 7, 2023, GGC received, pursuant to sections 6(a)(ii) of the Partial Repayment Agreement, the following payments or transfers from the applicable DCG Party: (i) a payment of $13,378,579.91 on account of outstanding principal in respect of the DCG Loans and (ii) a transfer of 91.1765777 BTC on account of outstanding principal in respect of the DCGI Loans.

**PLEASE TAKE FURTHER NOTICE** that, on December 22, 2023, the Court granted the PRA Motion, ECF No. 19, and entered the *Stipulated Order and Judgment Regarding Liability of DCG Under Master Lending Agreement*, ECF No. 18.

**PLEASE TAKE FURTHER NOTICE** that, on December 28, 2023 (the "Collateral Transfer Date"), pursuant to section 8 of the Security Agreements, (a) DCG exercised its right to convey to GGC all of its right, title, and interest in the DCG Collateral and (b) DCGI

3

exercised its right to convey to GGC all of its right, title, and interest in the DCGI Collateral ((a) and (b) together, the "Collateral Transfer"), as evidenced in the Voluntary Transfer Notice sent by the DCG Parties to GGC attached hereto as Exhibit 1, which had a total aggregate value of approximately $134,780,213.56 as of the Collateral Transfer Date.

**PLEASE TAKE FURTHER NOTICE** that, on January 5, 2024, GGC sent the letter response, attached hereto as Exhibit 2, responding to the Voluntary Transfer Notice sent by DCG and stating that nothing in the Loan Documents or the Partial Repayment Agreement alters the obligation of the DCG Parties, pursuant to the MLAs, to repay Outstanding Undisputed Amounts in the same asset type as required in accordance with the original loans and to pay transaction, conversion, collection and/or enforcement costs incurred in connection with the Loan Documents.

**PLEASE TAKE FURTHER NOTICE** that, on January 5, 2024, GGC received, prior to the applicable Payment Date under the Partial Repayment Agreement, $189,489,046.05 on account of outstanding principal in respect of the DCG Loans, which the DCG Parties assert in that certain Payoff Notice dated January 5, 2024 and attached hereto as Exhibit 3, resulted in a payment in full of all of respective obligations under the Loan Documents (except for any Disputed Amounts).

**PLEASE TAKE FURTHER NOTICE** that, as stated in GGC's letter response to the DCG Parties dated January 8, 2024, attached hereto as Exhibit 4, GGC disputes that the DCG Parties have repaid all Outstanding Undisputed Amounts under the Loan Documents and further notes that DCG remains obligated to pay Late Fees under the DCG Loans in the amount of approximately $27 million as of December 31, 2023 and all other transaction, conversion, collection and/or enforcement costs incurred in connection with the Loan Documents.

**PLEASE TAKE FURTHER NOTICE** that, GGC has reserved all rights, defenses, privileges and/or remedies with respect to the Collateral Transfer and the DCG Parties' remaining obligations under the Partial Repayment Agreement.

Dated:  January 8, 2024
        New York, New York

/s/ Sean A. O'Neal
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas Kessler
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for the Debtors
and Debtors-in-Possession*

4

**Exhibit 1**

**Voluntary Payment Notice**

December 28, 2023

**To:** **Genesis Global Capital, LLC**
175 Greenwich Street, Floor 38
New York, NY 10007

**RE: Voluntary Transfer Notice**

To whom it may concern:

Reference is made to that certain Amendment to Partial Repayment Agreement, dated as of November 28, 2023 (the "**Amendment**"), and that certain Partial Repayment Agreement (the "**Original Partial Repayment Agreement**" and the Original Partial Repayment Agreement as amended by the Amendment, the "**Partial Repayment Agreement**"), between Genesis Global Capital, LLC ("**GGC**"), Digital Currency Group, Inc. ("**DCG**"), and DCG International Investments Ltd. ("**DCGI**," together with DCG, the "**DCG Parties**," and collectively with GGC, the "**Parties**"). Further reference is made to that certain Security Agreement, dated as of November 28, 2023, by and between DCG and GGC (the "**DCG Security Agreement**"), and that certain Security Agreement dated as of November 28, 2023, by and between DCGI and GGC (the "**DCGI Security Agreement**" together with the DCG Security Agreement, the "**Security Agreements**"). Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Partial Repayment Agreement and the Security Agreements.

Pursuant to Section 4 of the Amendment, and Section 8 of the Security Agreements, the DCG Parties hereby notify GGC that as of the date hereof (the "**Voluntary Payment Notice Date**"):

i. DCGI is exercising its right to convey to GGC all of its right, title, and interest in the following Collateral Shares pledged to GGC under the DCGI Security Agreement: 1,422,175 shares of Grayscale Ethereum Classic Trust ("**ETCG**") and 4,830,343 shares of Grayscale Ethereum Trust ("**ETHE**") (the "**DCGI Voluntary Payment**").

ii. DCG is exercising its right to convey to GGC all of its right, title, and interest in the following Collateral Shares pledged to GGC under the DCG Security Agreement: 1,548,717 shares of ETCG and 37,917 shares of ETHE (the "**DCG Voluntary Payment**", together with the DCGI Voluntary Payment, the "**Voluntary Payments**").

Pursuant to Section 3 of the Amendment, and Section 8 of the DCG Security Agreement, the value of the DCG Voluntary Payment will be applied as follows:

a) First, to the Outstanding Undisputed Amounts under DCG's February 23 Loan, until such Outstanding Undisputed Amounts under DCG's February 23 Loan are fully repaid and satisfied in full; and

b) Second, to the Outstanding Undisputed Amounts under DCG's May 9 Loan.

Pursuant to Section 3 of the Amendment, and Section 8 of the DCGI Security Agreement, the value of the DCGI Voluntary Payment will be applied as follows:

a) First, to the Outstanding Undisputed Amounts under the DCGI MLA, until such Outstanding Undisputed Amounts under the DCGI MLA are fully repaid and satisfied in full; and

b) Second, to the Outstanding Undisputed Amounts under DCG's May 9 Loan.

In accordance with Section 4 of the Amendment and Section 8 of the Security Agreements, the ETCG Collateral and ETHE Collateral transferred to GGC in the Voluntary Payments shall be valued as of 8:00 p.m. Eastern Time on the

date hereof.  Upon application of the ETCG Collateral and ETHE Collateral to satisfy the DCG Parties' obligations as set forth herein, please confirm the Outstanding Undisputed Amounts GGC believes remain due and owing to GGC.

Upon receipt of this Voluntary Transfer Notice, GGC should immediately notify and instruct Continental Stock Transfer & Trust Company to transfer the Collateral identified in this Voluntary Transfer Notice to GGC.

The DCG Parties reserve all rights with respect to the application of the Voluntary Payments in accordance with the Amendment, the Original Partial Repayment Agreement, and the Security Agreements.

Yours faithfully,

**Digital Currency Group, Inc.**

DocuSigned by:
*Simon Koster*
D531B1AB693F40F...
Name: Simon Koster
Title: Chief Strategy Officer

**DCG International Investments Ltd.**

DocuSigned by:
*Michael Katz*
B16F21A873E5489...
Name: Michael Katz
Title: Legal Officer

**Exhibit 2**

**GGC's January 5 Letter**

# Genesis

January 5, 2024

VIA EMAIL

Digital Currency Group, Inc.
290 Harbor Drive, 5th Floor
Stamford, CT 06902
Attn:   Jeffrey Saferstein, jeffrey.saferstein@weil.com
        Jessica Liou, jessica.liou@weil.com

DCG International Investments Ltd.
Century House, 16 Par-la-Ville Road
Pembroke, HM 08, Hamilton, Bermuda

> Re:   Voluntary Transfer of ETCG and ETHE Shares
>       in Connection with Partial Repayment Agreement

Dear Sirs:

Reference is made to the Voluntary Transfer Notice sent by Digital Currency Group, Inc. ("DCG") and DCG International Investments Ltd. ("DCGI," together with DCG, the "DCG Parties," and the DCG Parties, together with GGC, the "Parties") to Genesis Global Capital, LLC ("GGC"), dated December 28, 2023 (the "Voluntary Transfer Notice").

As you know, GGC, DCG, and DCGI have entered into the following agreements:[1]

  i. Partial Repayment Amendment between the Parties, dated September 12, 2023 (the "Original PRA");

 ii. Amendment to Partial Repayment Agreement between the Parties, dated November 28, 2023 (the "PRA Amendment," and collectively with the Original PRA, the "PRA");

iii. Security Agreement between GGC and DCG, dated November 28, 2023 (the "DCG Security Agreement");

 iv. Security Agreement between GGC and DCGI, dated November 28, 2023 (the "DCGI Security Agreement," collectively with the DCG Security Agreement, the "Security Agreements," and the Security Agreements collectively with the PRA, the "Agreements");

---

[1] Capitalized terms used herein but not defined shall have the meaning ascribed to them in the PRA.

Digital Currency Group, Inc., p. 2
DCG International Investments, Ltd., p. 2

    v.    Amended and Restated Master Loan Agreement between GGC and DCG, dated November 10, 2022 (the "DCG MLA"); and

    vi.    Master Loan Agreement between GGC and DCGI, dated June 21, 2019 (the "DCGI MLA," and collectively with the DCG MLA, the "MLAs").

    In the Voluntary Transfer Notice, the DCG Parties requested that GGC "confirm the Outstanding Undisputed Amounts GGC believes remain due and owing to GGC." However, nothing in the Agreements requires GGC to provide such information or alters the obligation of the DCG Parties, pursuant to the MLAs, to repay Outstanding Undisputed Amounts incurred pursuant to the DCG Loans and DCGI Loans in the same asset type as required in accordance with the original loans. Specifically, pursuant to the MLAs, all Outstanding Undisputed Amounts must be repaid in the asset type of the original loan, including, without limitation, U.S. dollars with respect to the DCG Loans and Digital Assets with respect to the DCGI Loans.

    In light of the foregoing, GGC intends to notify the DCG Parties of the remaining Outstanding Undisputed Amounts upon the conversion of the Voluntary Payments (as defined in the Voluntary Transfer Notice) into the asset types denominating the Outstanding Undisputed Amounts. GGC will also notify the DCG Parties of all transaction costs incurred in connection with such conversions, which shall be included in amounts due and payable to GGC in accordance with Sections III and XII of the MLAs. Pending such notification, GGC agrees that Loan Fees and Late Fees (as applicable) due pursuant to the DCG Loans and DCGI Loans as of and following the Voluntary Transfer Notice may be calculated as if the DCG Loans and DCGI Loans had been paid as requested in the Voluntary Transfer Notice, using the price of ETCG and ETHE as of 8:00 p.m. Eastern Time on the date of the Voluntary Transfer Notice, subject to appropriate true-ups and adjustments following conversion (which true-ups and adjustments will include conversion and other transaction costs).

    GGC reserves the right, at any time and without notice, to exercise any rights, powers or privileges and/or remedies it has and/or to which it is entitled in accordance with the Agreements and MLAs, including, without limitation, all rights and remedies under Sections IX and XII of the MLAs. As of the time of this letter, GGC has not exercised all of its rights and remedies; however, neither such non-exercise nor anything in this letter shall be construed or constitute a waiver of any kind by GGC of any rights or remedies under the Agreements, MLAs, or applicable law. No acceptance by GGC of performance from DCG or DCGI, or performance by GGC to DCG or DCGI, under the Agreements or MLAs (including, without limitation, the entry into any transactions under, or amendments, supplements, or modifications to, any agreement or otherwise), shall constitute a waiver by GGC of any of its rights or remedies. Furthermore, any accommodation made by GGC with respect to any contractual obligations of DCG or DCGI under the Agreements or MLAs or otherwise shall neither constitute a waiver by GGC of any of its rights or remedies nor constitute a commitment to continue such accommodation or provide any other accommodation to DCG or DCGI. Nothing herein shall serve as an acceptance or admission of any instruction or communication received from DCG or DCGI.

    Nothing herein or in any correspondence with DCG or DCGI shall prejudice GGC's right to exercise any rights, remedies or powers or to assert any claims, causes of action, or defenses now or hereafter available under the MLAs, any instruments or agreements referred to therein

Digital Currency Group, Inc., p. 3
DCG International Investments, Ltd., p. 3

and/or applicable law, all of which rights, remedies, powers, claims and causes of action are cumulative and all of which are hereby specifically reserved. Further, GGC reserves the right to identify other Events of Default that have already occurred or shall occur.

                        Sincerely,

                        GENESIS GLOBAL CAPITAL LLC

**Exhibit 3**

**DCG Parties' Payoff Notice dated January 5, 2024**

January 5, 2024

**To:** **Genesis Global Capital, LLC**
250 Park Avenue South, 5th Floor,
New York, NY 10003

*Re: Payoff Notice*

Ladies and Gentlemen:

Reference is made to (i) the Amended and Restated Master Loan Agreement, dated as of November 10, 2022 (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "DCG MLA"), between Digital Currency Group, Inc., a Delaware corporation ("DCG"), as borrower, and Genesis Global Capital, LLC, a Delaware limited liability company (the "GGC"), as lender, and each of the loans made thereunder prior to the date hereof, including those described on Schedule I hereto under the heading "DCG Loans" (all such loans, collectively, the "DCG Loans"), (ii) the Master Loan Agreement, dated as of June 21, 2019 (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "DCGI MLA" and, together with the DCG MLA, collectively, the "MLAs" and each an "MLA"), between DCG International Investments Ltd. ("DCGI" and, together with DCG, collectively, the "Borrowers" and each a "Borrower"), as borrower, and GGC, as lender, and each of the loans made thereunder prior to the date hereof, including those described on Schedule I hereto under the heading "DCGI Loans" (all such loans, collectively, the "DCGI Loans" and, together with the DCG Loans, collectively, the "Loans" and each a "Loan"), (iii) the Partial Repayment Agreement, dated as of September 12, 2023 (as amended by the Amendment to Partial Repayment Agreement, dated as of November 28, 2023 (the "PRA Amendment," and as otherwise amended, restated, supplemented or otherwise modified prior to the date hereof, the "PRA"), (iv) the Security Agreement, dated as of November 28, 2023 (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "DCG Security Agreement"), made by DCG in favor of GGC, and (v) the Security Agreement, dated as of November 28, 2023 (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "DCGI Security Agreement" and, together with the DCG Security Agreement, collectively, the "Security Agreements" and each a "Security Agreement"), made by DCGI in favor of GGC. The Security Agreements, together with the MLAs, each loan term sheet evidencing the Loans, any other document executed and delivered by DCG and/or DCGI in respect of any Loan, any MLA or any Security Agreement, and all other instruments, agreements and other documents related to the foregoing shall be referred to herein as, collectively, the "Loan Documents". Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the PRA.

In accordance with Section 13 of the PRA Amendment, on January 5, 2024 (the "Payoff Date"), the Borrowers paid, in full, all of their respective obligations under the Loan Documents (except for the Disputed Amounts (as defined in the PRA Amendment)). After giving effect to all prior repayments of the Loans and other obligations of DCG under the DCG MLA and DCGI under the DCGI MLA, including, without limitation, the Voluntary Payment (as defined in the PRA Amendment and the DCG Security Agreement) made by DCG on December 28, 2023, and the Voluntary Payment (as defined in the PRA Amendment and the DCGI Security Agreement) made by DCGI on December 28, 2023, DCG paid the total amount remaining under the Loan Documents (other than the Disputed Amounts) in the amount of $189,710,410.79 (the "Payoff Amount"), comprising $189,489,046.05 of principal of Loans outstanding under the DCG MLA (as agreed between the Borrowers and GGC) and $221,364.74 of accrued and unpaid interest thereon as of the Payoff Date.

Effective immediately and without further action by GGC or any other person: (a) the Loans and all other obligations, guaranties, liabilities and indebtedness (including, without limitation, for all principal, interest and fees) of, and all other amounts owing by, the Borrowers (or either of them) relating to the Loan Documents (the foregoing, collectively, the "Loan Obligations"), in each case, other than (x) the Disputed Amounts and (y) any obligations that, by their express terms, survive payment in full of the Loans and termination of the Loan Documents (clauses (x) and (y), collectively, the "Excluded Obligations"), shall be deemed paid and satisfied in full and shall be irrevocably released, terminated and discharged, and DCG and DCGI shall be irrevocably released from all Loan Obligations (other than any Excluded Obligations); (b) the PRA (as amended by the PRA Amendment) shall be terminated as to each of DCG and DCGI pursuant to Section 13 of the PRA Amendment; (c) all of the other Loan Documents shall be terminated and be of no further force or effect (in each case, other than any provisions therein that, by their express terms, (x) govern or evidence the Disputed Amounts or (y) survive payment in full of the Loans and termination of the Loan Documents); and (d) all security interests, pledges and other liens or similar encumbrances granted to or held by GGC in any property or assets of DCG, DCGI or any other person as security for the Loan Obligations or otherwise arising under any Security Agreement or any other Loan Document (including, without limitation, any liens and security interests evidenced by Uniform Commercial Code financing statements) shall be irrevocably released, discharged and terminated.

The Borrowers reserve all rights with respect to (i) the approximately $52.5 million (the "Luno Setoff Amount") DCG paid to Luno Australia Pty Ltd ("Luno") pursuant that certain *Notice of Setoff*, dated December 15, 2022, in connection with that certain *Limited Guaranty*, between DCG and Luno, and any interest accrued on the Luno Setoff Amount that has been paid by DCG to GGC; (ii) the Disputed Amounts; and (iii) all other claims DCG and/or DCGI may have against GGC (including, without limitation, those claims described in the proof of claim filings made by DCG and DCGI against GGC and its affiliated debtors in their respective chapter 11 bankruptcy proceedings).

[*Remainder of page intentionally left blank*]

2

Very truly yours,

**Digital Currency Group, Inc.**

By: _____
Name:  Simon Koster
Title:  Chief Strategy Officer

**DCG International Investments Ltd.**

By: _____
Name:  Michael Katz
Title:  Legal Officer

## Schedule I

Loans

### DCG Loans

1. That certain loan dated January 24, 2022, as amended by the Loan Term Sheet dated as of November 10, 2022, with an original principal amount equal to $100,000,000.

2. That certain loan dated February 23, 2022, as amended by the Loan Term Sheet dated as of November 10, 2022, with an original principal amount equal to $100,000,000.

3. That certain loan dated May 9, 2022, with an original principal amount equal to $200,000,000.

4. That certain loan dated May 10, 2022, with an original principal amount equal to $100,000,000.

### DCGI Loans

1. That certain loan dated June 22, 2022, as amended by the Loan Term Sheet dated as of November 10, 2022, with a principal amount equal to 4,550.45173345 BTC.

2. That certain term loan dated September 21, 2020, and that certain term loan dated December 21, 2020 with a cumulative principal amount equal to 14,048 BCH.

**Exhibit 4**

**GGC's January 8 Letter**

# Genesis

January 8, 2024

VIA EMAIL

Digital Currency Group, Inc.
290 Harbor Drive, 5th Floor
Stamford, CT 06902
Attn:   Jeffrey Saferstein, jeffrey.saferstein@weil.com
        Jessica Liou, jessica.liou@weil.com

DCG International Investments Ltd.
Century House, 16 Par-la-Ville Road
Pembroke, HM 08, Hamilton, Bermuda

          Re:    Payoff Notice

Dear Sirs:

Reference is made to (i) the Payoff Notice sent by Digital Currency Group, Inc. ("DCG") and DCG International Investments Ltd. ("DCGI," together with DCG, the "DCG Parties") to Genesis Global Capital, LLC ("GGC" and, together with the DCG Parties, the "Parties"), dated January 5, 2024 (the "Payoff Notice"), (ii) the Voluntary Transfer Notice sent by DCG and DCGI to GGC dated December 28, 2023 and the (iii) Letter Response sent by GGC to DCG and DCGI dated January 5, 2024 (the "January 5 Letter").[1]

In the Payoff Notice, the DCG Parties purport to have paid off in full "all of their respective obligations under the Loan Documents (except for the Disputed Amounts (as defined in the PRA Amendment))" and applied the Voluntary Payments (as defined in the Voluntary Transfer Notice) to reduce the outstanding principal balance under the DCG Loans and the DCGI Loans. On the same day as the Payoff Notice, DCG published a statement on the social media platform X (formerly known as Twitter), stating that "DCG is pleased to announce that we have completed a payoff of all short-term loans from Genesis."

However, as noted in GGC's January 5 Letter, GGC disputes that the Voluntary Payments serve to reduce the principal amounts outstanding under the DCG Loans and DCGI Loans. Nothing in the Agreements (as defined in the January 5 Letter) alters the obligation of the DCG Parties, pursuant to the MLAs, to repay Outstanding Undisputed Amounts incurred pursuant to the DCG Loans and DCGI Loans in the same asset type as required in accordance with the original loans. Specifically, pursuant to the MLAs, all the Outstanding Undisputed Amounts must be repaid in the asset type of the original loan, including without limitation, U.S. dollars with respect

---

[1] Capitalized terms used herein but not defined shall have the meaning ascribed to them in the Payoff Notice, the January 5 Letter or the Partial Repayment Agreement, as applicable.

Digital Currency Group, Inc., p. 2
DCG International Investments, Ltd., p. 2

to the DCG Loans and Digital Assets with respect to the DCGI Loans. Moreover, as stated in the January 5 Letter, the DCG Parties remain obligated to pay all transaction or conversion costs in connection with the Voluntary Payments, which are payable in accordance with Sections III and XII of the MLAs. Lastly, the DCG Parties also remain obligated to pay Late Fees owed under the DCG Loans (estimated at more than $27 million as of December 31, 2023) and enforcement costs (estimated at more than $1 million) pursuant to sections XII of the MLAs.

GGC intends to notify the DCG Parties of the remaining Outstanding Undisputed Amounts upon the conversion of the Voluntary Payments (as defined in the Voluntary Transfer Notice) into the asset types denominating the Outstanding Undisputed Amounts. GGC will also notify the DCG Parties of all transaction costs incurred in connection with such conversions, which shall be included in amounts due and payable to GGC in accordance with Sections III and XII of the MLAs. GGC also intends to notify the DCG Parties of any appropriate true-ups and adjustments following conversion (which true-ups and adjustments will include conversion and other transaction costs).

GGC reserves the right, at any time and without notice, to exercise any rights, powers or privileges and/or remedies it has and/or to which it is entitled in accordance with the Agreements and MLAs, including, without limitation, all rights and remedies under Sections IX and XII of the MLAs. As of the time of this letter, GGC has not exercised all of its rights and remedies; however, neither such non-exercise nor anything in this letter shall be construed or constitute a waiver of any kind by GGC of any rights or remedies under the Agreements, MLAs, or applicable law. No acceptance by GGC of performance from DCG or DCGI, or performance by GGC to DCG or DCGI, under the Agreements or MLAs (including, without limitation, the entry into any transactions under, or amendments, supplements, or modifications to, any agreement or otherwise), shall constitute a waiver by GGC of any of its rights or remedies. Furthermore, any accommodation made by GGC with respect to any contractual obligations of DCG or DCGI under the Agreements or MLAs or otherwise shall neither constitute a waiver by GGC of any of its rights or remedies nor constitute a commitment to continue such accommodation or provide any other accommodation to DCG or DCGI. Nothing herein shall serve as an acceptance or admission of any instruction or communication received from DCG or DCGI.

Nothing herein or in any correspondence with DCG or DCGI shall prejudice GGC's right to exercise any rights, remedies or powers or to assert any claims, causes of action, or defenses now or hereafter available under the MLAs, any instruments or agreements referred to therein and/or applicable law, all of which rights, remedies, powers, claims and causes of action are cumulative and all of which are hereby specifically reserved. Further, GGC reserves the right to identify other Events of Default that have already occurred or shall occur.

Sincerely,

GENESIS GLOBAL CAPITAL LLC